IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RFD-TV, LLC, A Delaware Limited Liability Company, | ) ) ) | CASE NO. 8:10CV43 |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | MEMORANDUM AND ORDER |
| MCC MAGAZINES, LLC, A Georgia Limited Liability Company, d/b/a EXTREME COWBOY RACE, and d/b/a HORSECITY.COM TV, | ) ) ) ) ) | |
| Defendant. | ) | |

These matters are before the Court on the Motion to Compel Arbitration (Filing No. 7), filed by Defendant MCC Magazines LLC ("MCC"); and the Motion for Temporary Restraining Order and Preliminary Injunction (Filing No. 15) filed by Plaintiff RFD-TV, LLC ("RFD"). The Court heard arguments on RFD's Motion for Temporary Restraining Order ("TRO") on February 23, 2010. The parties also submitted written briefs on both motions. After careful review of the oral and written arguments, the Court finds MCC's Motion to Compel Arbitration should be granted, and RFD's Motion for TRO and Preliminary Injunction should be denied.

## PROCEDURAL BACKGROUND

RFD and Rural Media Group, Inc. ("Rural Media") originally filed this action in the District Court of Douglas County, Nebraska, on January 27, 2010. (Filing No. 1-1.) On February 2, 2010, MCC removed the action to this Court on the basis of diversity jurisdiction. (Filing No. 1 ¶¶ 5-7.) The next day, February 3, 2010, MCC filed its Motion to Compel Arbitration, arguing the claims presented by RFD and Rural Media fall within the scope of the arbitration clause in the Program Licensing Agreements ("licensing

agreements") entered into by the parties. (Filing No. 7.) On February 22, 2010, RFD filed its First Amended Complaint (Filing No. 14), eliminating Rural Media as a plaintiff and alleging causes of action for breach of contract and copyright infringement. On the same day, RFD filed its Motion for TRO and Preliminary Injunction to enjoin MCC's alleged violation of the licensing agreements. (Filing No. 15.)

## FACTUAL BACKGROUND

RFD is a Delaware limited liability company with its principal place of business in Omaha, Nebraska. (Amended Complaint, Filing No 14 ¶¶ 1-2.) RFD is a cable and satellite television network with programming aimed at agricultural and rural America. (*Id.* ¶ 6.) MCC is a Georgia limited liability company doing business as "Extreme Cowboy Race" and "Horsecity.com TV ("Horsecity"), which produced television programs for RFD. (*Id.* ¶ 3.) On November 10, 2007, RFD and MCC entered into licensing agreements. (*Id.* ¶ 18.) Under these agreements, MCC agreed to grant RFD an exclusive licence in the programs Horsecity and Extreme Cowboy Race including the exclusive right to air the programs over RFD's networks. (Filing No. 14-1 ("Extreme Cowboy Races licensing agreement") at 2-4; Filing No. 14-2 ("Horsecity licensing agreement") at 2-4.) The agreement provides a post-termination clause which states:

> [I]t is specifically agreed and understood by the parties hereto that the herein granted License and exclusivity prohibits the hosting individual(s) and/or personality, associate participants, their names, voices, likenesses from appearances on any channel (TV, Radio and related media and/or mediums) during the term of this Agreement and for one (1) year from and after termination as provided herein.

(Extreme Cowboy Races licensing agreement at 3; Horsecity licensing agreement at 3.)

The licensing agreements further provide:

2

> [I]t is specifically agreed and understood by the parties hereto that the herein grant of License shall continue for one (1) year post-termination with respect of RFD, only, and shall allow RFD, in its sole discretion and at no cost to Licensor, the right to re-broadcast, the right to distribute and/or the right of transmission of said Programs over all distributors, including cable and direct broadcast satellite, IP and/or Broadband delivered, Internet Webcast, Video-on-Demand, Personal Digital Assistances, Cell Phones, Mobile Media, HD and all other mediums.

(Extreme Cowboy Races licensing agreement at 3; Horsecity licensing agreement at 3.)

The licensing agreements also contain a mandatory arbitration clause which states:

> [A]ny dispute arising in or relating to this Agreement shall be resolved by binding arbitration in Omaha, Douglas County, Nebraska, only, by a panel of three (3) arbitrators and pursuant to the rules and procedures of the American Arbitration Association. Notwithstanding the foregoing, it is agreed by and between the parties hereto that the arbitration board shall consist of three (3) members, one of whom shall be selected by Licensor and one of whom shall be selected by RFD. The third member shall be chosen by the members selected by Licensor and RFD. Any and all decisions by said arbitration board shall have the effectiveness of law and shall be binding upon Licensor and RFD. In the event of an arbitration or court action between the parties arising from and with respect to this Agreement, the party prevailing in such arbitration or litigation shall be entitled to recover their reasonable costs incurred therein, including reasonable attorney fees, in addition to any other remedy available to such party hereunder or otherwise.

(Extreme Cowboy Races licensing agreement at 15; Horsecity licensing agreement at 15.)

The licensing agreements expired on December 31, 2009 (Extreme Cowboy Races licensing agreement at 4; Horsecity licensing agreement at 4.), and were not renewed. RFD alleges MCC violated the one-year, post-termination, exclusivity clause in the licensing agreements, by authorizing Performance One Media, LLC ("Performance One") to broadcast Horsecity on Performance One's satellite cable channel.[1]  (Filing No. 17-6,

---

[1] The Court notes MCC's objection at the hearing to this statement. The Court cites this statement to frame the issues and not to establish the undisputed facts.

Affidavit of Patrick Gottsch, ¶ 5.)  RFD also alleges that MCC's failure to abide by the terms of the licensing agreements will entice other programmers to leave RFD for other networks. (Filing No. 17-2, Affidavit of Patrick Gottsch, ¶¶ 9-10.)  MCC counters that any programming it has licensed to Performance One is not the same or substantially similar to the programs it previously produced for RFD.  (Affidavit of Paul Smith ¶ 10.)  Further, MCC asserts it has not prevented RFD from rebroadcasting programs previously produced for RFD.  (*Id.* ¶ 14.)

## DISCUSSION

I.  **MCC's Motion to Stay and for an Order Compelling Arbitration**

The Federal Arbitration Act ("FAA") establishes a strong federal policy in favor of arbitration.  *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226 (1987); *see also Houlihan v. Offerman & Co., Inc.,* 31 F.3d 692, 695 (8th Cir.1994).  In deciding a motion to compel arbitration, the Court must determine whether: (1) a valid agreement to arbitrate exists between the parties; and (2) the specific dispute falls within the scope of the agreement.  *Pro Tech Indus., Inc. v. URS Corp.,* 377 F.3d 868 (8th Cir.2004); *Houlihan,* 31 F.3d at 694-95.  The issue of scope examines whether the parties agreed to arbitrate a particular claim, but not the potential merits of that claim. *Medcam, Inc. v. MCNC,* 414 F.3d 972, 975 (8th Cir.2005).  Further, "[t]he scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration." *Id.* (internal citations omitted).  An order compelling arbitration should not be denied "'unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute.'" *Id.* (quoting *Lyster v. Ryan's Family Steak Houses, Inc.,* 239

F.3d 943, 945 (8th Cir.2001)).

In this case, neither party challenges the application of the FAA to arbitration of the licensing agreements or the validity of the arbitration provision.  Further, neither party argues the present dispute falls outside the scope of the licensing agreements.  RFD specifically agreed to a stay of this litigation pending resolution of the arbitration of the disputes arising from the agreements.  (Filing No. 18, RFD's Response to MCC's Motion to Compel Arbitration, at 2.)  Accordingly, the Court finds MCC's Motion to Compel Arbitration should be granted.

## II.   Motions for Injunctive Relief

Because the licensing agreements lack "qualifying contractual language," the Court cannot grant RFD's Motion for a TRO and preliminary injunction.[2]  The parties agree the underlying dispute is arbitrable. The Court, therefore, must first determine whether it may grant a TRO and preliminary injunction under the language of the licensing agreements. *See Peabody Coalsales Co. v. Tampa Electric Co.*, 36 F.3d 46, 47-48 (8th Cir. 1994) (examining the contractual language in a case involving arbitration to determine whether a preliminary junction is appropriate).  RFD cites *Peabody* in support of its assertion that the licensing agreements contemplate preliminary injunctive relief.  In *Peabody*, both parties moved for an order compelling arbitration of a contract dispute.  *Id.* at 47.  The plaintiff also requested a preliminary injunction requiring continued performance of the

---

[2] Arguments at the February 23, 2010, hearing before the Court only addressed RFD's motion for a TRO.  However, as described below, the contractual language of the licensing agreements and the law of the Eighth Circuit clearly prevent the Court from granting preliminary injunctive relief and further argument is unnecessary.

5

contract until disposition of the case on arbitration. *Id.* The district court denied the motion and the plaintiff appealed. *Id.* The Eighth Circuit reversed the district court, finding that the contract contained "qualifying contractual language."[3] "Qualifying contractual language" means "language which provides the court with clear grounds to grant relief without addressing the merits of the underlying arbitrable dispute." *Id.* at 47 n. 3.

The Eighth Circuit noted that the contract expressly stated "performance of [the parties'] respective obligations under [the contract] shall be continued in full by the parties during the dispute resolution process." *Id.* at 47. When the validity of an arbitration agreement is not at issue, "the FAA requires the court to 'make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'" *Id.* at 48 (quoting 9 U.S.C. § 4); *see also Volt Info. Sciences, Inc. v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 474-75 (1989) ("[Section 4] confers only the right to obtain an order directing that 'arbitration proceed in the manner provided for in [the parties'] agreement.'"). The Court found these terms clearly required continued performance as part of the dispute resolution process. Thus, an order requiring that arbitration proceed in the manner provided in the agreement included, by necessity, an order requiring continued performance. *Id.*

The facts of the present case are different from those in *Peabody*. RFD is unable to identify specific language in the licensing agreements that expressly requires continued performance as part of the dispute resolution process. Unlike the contract in *Peabody*, an

---

[3] In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey,* 726 F.2d 1286, 1292 (8th Cir.1984), the Eighth Circuit held "where the [FAA] is applicable and no *qualifying contractual language* has been alleged, the district court errs in granting injunctive relief." (Emphasis added).

order compelling arbitration would not necessarily include an order requiring continued performance. Despite the absence of specific language, RFD claims the licensing agreements contain other qualifying contractual language. RFD claims the qualifying language includes a (1) a reference in the arbitration clause to "an arbitration or court action between the parties," and (2) specific references to the courts of the State of Nebraska in the governing law provisions of the licensing agreement. RFD also argues, based on dictionary definitions, that the term "dispute" as used in the arbitration clause of the licensing agreements is narrower than the term "claim," thus enabling the Court to issue a preliminary injunction because RFD's motion comes before the Court as a "claim." In sum, RFD argues these references to the courts show RFD "expressly reserves the right to seek injunctive relief in this Court pending submission of the arbitrable claims to a duly constituted arbitration panel." (Filing No. 18, RFD's Response to Motion to Compel, at 2.)

Such references to the "courts" do not support RFD's assertion that the licensing agreements contain clear, qualifying contractual language. The Eighth Circuit has rejected an argument for qualifying contractual language even where references to injunctive relief were explicit. *Manion v. Nagin*, 255 F.3d 535, 538, 539 (8th Cir. 2001). In *Manion*, the plaintiff sought a preliminary injunction, arguing qualifying contractual language existed where the contract stated "either party is entitled to injunctive relief in case of any breach," and elsewhere provided "[the agreement to arbitrate] is without prejudice to the right of a party under applicable law to request interim relief directly from any court . . . ." *Id.* at 538. The Eighth Circuit rejected this argument, reasoning that the contract only granted the ability to request injunctive relief, and did not mandate that the parties continue their

7

specified obligations during arbitration.  *Id.* at 539.  The Eighth Circuit also reasoned that it could not grant injunctive relief without examining the merits of the case, a task statutorily reserved to the arbitrators.  *Id.*

The contract at issue in *Manion* expressly granted the right to seek injunctive relief, yet the Eighth Circuit affirmed the district court's denial of a preliminary injunction.  Unlike the contract in *Manion*, the licensing agreements in this case lack any reference to preliminary injunctive relief.  Instead, RFD asks the Court to piece together contractual language to infer a right to obtain preliminary injunctive relief.  However, contractual references to "courts" and "claims" do not imply a right to injunctive relief.  Even adopting RFD's construction, references to the "courts" do not imply continued performance during the arbitration process.  Further, without addressing the merits of the claim, this Court is unable to determine whether MCC is in breach of the licensing agreements.  No language identified by RFD provides the Court with clear grounds to grant relief without addressing the merits of the underlying arbitrable dispute. Accordingly, the licensing agreements do not contain qualifying contractual language and a preliminary injunction would be improper.

### III.     *Dataphase Factors*

RFD claims that injunctive relief does not require the Court to address the merits of the case, and asks the Court simply to require the parties to abide by the terms of the contract.  Though RFD has characterized its requested relief as a TRO and preliminary injunction, it is not preliminary to the Court's ultimate resolution of the merits. The merits are properly left to the arbitrators and the Eighth Circuit directs that the Court avoid the delay that would result from application of the *Dataphase* criteria.  *Peabody*, 36 F.3d at 48

n. 7; *Hovey*, 726 F.2d at 1291 n. 10.  Here, the parties agree that the core dispute is arbitrable.[4]  Thus, the Court need not address the *Dataphase* factors to determine whether a preliminary injunction is appropriate.  Because an order compelling arbitration does not, by necessity, include continued performance, the Court finds the motion for a TRO and preliminary injunction should be denied.

Accordingly,

IT IS ORDERED:

1. Defendant's Motion to Compel Arbitration (Filing No. 7) is granted, as follows:

    a. All claims are stayed pending binding arbitration in accordance with the Federal Arbitration Act and under the procedures of the American Arbitration Association.

    b. The parties shall file, electronically, written status reports concerning the progress of the arbitration proceedings.  The first status report shall be filed by April 30, 2010.  Subsequent status reports are due every 90 days thereafter until all arbitration proceedings are completed.

2. Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Filing No. 15) is denied.

---

[4] In *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589 (8th Cir.1984), the Eighth Circuit applied the *Dataphase* criteria in a case involving an arbitration clause.  However, in *Ferry-Morse* the injunction at issue was a traditional preliminary injunction and the district court had not yet determined whether the underlying dispute was arbitrable.  Because RFD and MCC agree the underlying dispute is arbitrable, *Ferry-Morse* is inapposite

DATED this 1st day of March, 2010.

BY THE COURT:

S/Laurie Smith Camp
United States District Judge